UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv593-3-MU[1]
(3:08cr209-W)

| | |
|---|---|
| MATTHEW BOYD LISENCO, )<br>)<br>Petitioner, )<br>v. )<br>)<br>UNITED STATED OF AMERICA, )<br>)<br>Respondent. ) | ORDER |

**THIS MATTER** comes before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (Doc. No. 1); Respondent's Motion to Dismiss and Memorandum in Support, (Doc. Nos. 6 and 7); and Petitioner's response, (Doc. No. 14).[2] For the reasons stated herein, Petitioner's Motion to Vacate will be denied and dismissed and Respondent's Motion to Dismiss will be granted.

## I. PROCEDURAL HISTORY

On October 6, 2008 Petitioner was charged by Information with the transportation or transmission of child pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(1). (Crim. Case 3:08cr209, Doc. No. 1: Information). That same day, Petitioner entered into a Plea Agreement with the Government in which he agreed to plead guilty to the Information and both

---

[1] This case has been re-assigned to the Honorable Graham C. Mullen, Senior United States District Court Judge, as the Honorable Frank D. Whiney is currently out of the district for an extended period. See 3:11mc67-W, Doc. No. 1.

[2] The Court notes that on June 13, 2011, Petitioner requested that his response (Doc. No. 14), be held in abeyance stating that he would revise his response and file an amended response on or before July 25, 2011. As of the date of this Order, Petitioner did not file an amended response. Therefore, the Court considered Petitioner's previously filed response, (Doc. No. 14).

1

parties stipulated that Petitioner's total offense level was a level 35 and that Petitioner fell within a criminal history category of I. (Id., Doc. No. 2: Plea Agreement). The Government also agreed that Petitioner "should receive a two-level downward departure and downward variance . . . [and that] [t]he government and Defendant agree[d] that a sentence of 135 months [was] appropriate." (Id. ¶ 6(I)).

On October 15, 2008, the Petitioner appeared before Magistrate Judge David Keesler and plead guilty to the Information. (Id., Doc. No. 5: Entry and Acceptance of Guilty Plea form). Judge Keesler engaged Petitioner in a lengthy colloquy to ensure that he understood the nature and consequences of the proceedings and his actions. (Id.). During the plea colloquy, Petitioner affirmed under oath that he understood the elements of the offense to which he was pleading guilty and the maximum penalties he faced and that he was, in fact, guilty of the charged drug conspiracy.[3] The Court fully explained the nature of the Rule 11(c)(1)(C) plea agreement and that the district court could either accept the plea and sentence Petitioner according to the plea agreement or reject it and Petitioner could go to trial or further negotiate with the Government. Petitioner also affirmed that he was waiving his right to a jury trial and to confront the witnesses against him, and that he was waiving his right to appeal and challenge his conviction or sentence in a post-conviction proceeding. Petitioner affirmed that no one forced him to plead guilty and that he was satisfied with the services of his attorney. The Court

---

[3] While the record does not contain a transcript of the Plea and Rule 11 hearing, the undersigned was able to listen to an audio recording of the proceedings and confirmed that the magistrate judge conducted a full Plea and Rule 11 Proceeding in which he discussed with Petitioner, and Petitioner stated that he understood, the charge and the penalties. Petitioner also stated that he was, in fact, guilty of the offense and that he has discussed the case with his counsel, including possible defenses to the charge and was satisfied with his counsel. Petitioner also stated that no one forced, intimidated or coerced him into pleading guilty.

accepted Petitioner's plea finding that the plea was knowingly and voluntarily made and that Petitioner understood the charges, potential penalties and consequences of the plea.

Prior to Petitioner's sentencing hearing, the Probation Office submitted a Presentence Report ("PSR"). The Probation Officer summarized the evidence against Petitioner and the facts of his offense. (Crim. Case 3:08cr209, Doc. No. 16: PSR at 3-5). In particular, the Probation Officer reported that on June 1, 2006, an FBI agent in Billings, Montana logged onto an Internet Relay Chat server in order to monitor channel traffic, and entered a channel known as "#allgirls" and noticed a person using the nickname "tigr7731," advertising F-serve access to his computer system. Id. at 3. The agent gained access and observed a file inventory that included files containing names suggestive of child pornography images. Id. The agent was able to download seven graphic image files from the F-Serve advertised by "tigr7731," and six of the seven images depicted child victims engaged in sexually explicit conduct. Further investigation revealed that "tgr7731" was registered to an IP address belonging to Richard Lisenco at 2806 Archdale Drive in Charlotte, North Carolina. (Id. at 4). Agents learned that Richard Lisenco is deceased but that his wife, Lenora, lived at that address with Petitioner, their son. A second son, Jonathon, had previously lived at the residence but moved out in March 2006. (Id.). On June 19, 2006, the FBI agent received information that "tigr7731" was again operating an F-serve from the same IP address. The agent went to the F-serve and noticed an advertisement indicating a collection of images and movies involving "preteen" individuals. On October 11, 2006, FBI agents executed a search warrant at the Lisenco residence, seizing computers and other items. Petitioner initially told authorities that he had never viewed child pornography from the computer but would not be surprised if his brother had done so. (Id.). Petitioner later recanted his previous statement that he had not viewed pornography on the computer, admitting

3

that he had used several file-sharing programs including Forteagent and Limeware, to find pornography. Petitioner told agents that he used his brother's Hustler video on a file-sharing program called MIRC. In exchange, he began receiving child pornography images traded during the peer-to-peer file sharing with other individuals wanting to view his images. (Id.) He stated that MIRC was installed in May 2006 and continued until he stopped sharing files in July 2006. Petitioner also told agents that once he viewed child pornography in the files, he deleted them. (Id.) A forensic review of Petitioner's computers yielded eight videos and sixty-two images consistent with child pornography.

Prior to the Sentencing hearing, Petitioner's counsel submitted a sentencing memorandum regarding the factors the Court must consider in fashioning a sentence pursuant to 18 U.S.C. § 3553(a). (Crim. Case 3:08cr209, Doc. No. 19: Sentencing Memorandum). Counsel argued that there were several factors militating in favor of a downward variance, including the fact that Petitioner voluntarily ceased the charged conduct and deleted the contraband images prior to knowing he was being investigated; his lack of criminal history; and his lack of any history of sexual problems or misconduct involving children and his longstanding appropriate sexual relationship with an age peer. (Id.).

At the Sentencing hearing, Petitioner reaffirmed his responses given to Magistrate Judge Keelser at his Plea and Rule 11 hearing and stated that he was, in fact, guilty of distribution of child pornography in violation of 18 U.S.C. § 2252. The Court affirmed Judge Keesler's findings that the Petitioner's plea was knowing and voluntarily made, and that Petitioner fully understood the charges, potential penalties and consequences of his plea. The Court then affirmed the Magistrate Judge's acceptance of the plea. (Crim. Case 3:08cr209, Doc. No. 28: Sentencing Transcript at 3-4). In support of a factual basis, the parties stipulated that the

information contained in the PSR supported a factual basis to support Petitioner's plea. (Id. at 5). The Court allowed Petitioner's counsel to argue in support of a variance motion. Counsel argued that Petitioner was not looking for child pornography on his computer. Instead, he used a file sharing program which allowed child pornographic images even though he was only interested in legal pornography. Counsel noted that Petitioner had no criminal history and that when he became aware he was being investigated, he was very cooperative. Counsel argued that the Guidelines call for an enormous sentence given the specific facts of this case. (Id. at 13-15). The Government agreed that a two level variance was appropriate because Petitioner "voluntarily ceased his conduct before we ever found him." (Id. at 17). The Government agreed that Petitioner's primary interest was not child pornography, but he "somehow came across the child pornography and had it around and allowed it to be downloaded from his computer for a couple of months." (Id. at 18). During the time when the child pornography was available on his computer, an FBI agent was able to download some from his computer, which is the basis of the distribution charge. The Government agreed that when they executed the search warrant, most of the child pornography had been deleted or Petitioner attempted to delete it. (Id.). Therefore, the Government agreed that the two-level variance was appropriate and that the 135 month sentence contemplated by the Plea Agreement was appropriate.

The Court considered the Sentencing Guideline calculations, the minimum sentence applicable to this case and the sentencing factors pursuant to 18 U.S.C. § 3553(a), as well as the two-level downward variance and accepted the 11(c)(1)(C) Plea Agreement. The Court allowed the two-level variance to a level 33 offense level, acknowledging that the sentencing would be outside of the advisory Guidelines range, and sentenced Petitioner to a term of 135 months imprisonment. (Crim. Case 3:08cr209, Doc. No. 20: Judgment). Petitioner did not appeal his

conviction or sentence. On March 24, 2011 Petitioner filed the instant Motion to Vacate alleging that his sentence does not reflect the condition of "sufficient but not more than necessary," and that his counsel was ineffective for failing to prepare for a possible trial, for meeting with Petitioner only once and for failing to argue for mitigating circumstances at sentencing. (Doc. No. 1).

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether a petitioner is entitled to any relief. If the motion is not dismissed after that initial review, the court must direct the Government to respond. Id. The court must then review the Government's answer and any materials submitted by the parties and determine whether an evidentiary hearing is warranted pursuant to Rule 8(a). A district court may dismiss a petitioner's claim without an evidentiary hearing when the pleadings and additional materials submitted by the parties conclusively show that a petitioner is not entitled to relief on any of his claims. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). Following such review, the Court finds that the pleadings conclusively show that Petitioner is not entitled to relief on any of his claims; thus, a hearing is not required.

## III. LEGAL DISCUSSION

A.   **Sentencing Claim**

Petitioner first argues that "[t]he sentence given does not reflect the condition of 'sufficient but not more than necessary.'" (Doc. No. 1 at 3). In support of this claim, Petitioner

6

contends that "[c]onsidering the court's own statements that the defendant never had any intention of involvement in illegal file trading, the sentence of 135 months cannot rationally be construed as 'not more than necessary.'" (Id.). It seems Petitioner is referring to the Court's statement that trading child pornography is not what Petitioner set out to do, but that it was something he was doing as part of downloading the adult pornography. (Crim. Case 3:08cr209, Doc. No. 28: Sentencing Transcript at 22). Petitioner misunderstood the Court's statement. The Court did not, as Petitioner suggests, imply that Petitioner's actions were not in violation of the law. Instead, the Court simply noted, as Petitioner's counsel and the Government did, that Petitioner did not set out to view child pornography. Instead, Petitioner was viewing legal pornographic images, but due to his behavior, which involved file sharing, Petitioner allowed the downloading of child pornography and also allowed redistribution of that.

First, pursuant to his Plea Agreement, Petitioner waived his right to challenge his sentence or conviction except for claims of ineffective assistance of counsel and prosecutorial misconduct. (Criminal Case No. 3:08cr209, Doc. No. 2: Plea Agreement at ¶ 16.] At his Rule 11 hearing, Petitioner swore under oath that he understood these waivers. The magistrate judge and this Court found Petitioner's plea to be knowing and voluntary. The Fourth Circuit has upheld knowing and voluntary waivers to contest convictions or sentences in § 2255 motions. United States v. Lemaster, 403 F.3d 216, 220-21 (4th Cir. 2005). Petitioner's claim challenging his sentence does not fall within the scope of the exceptions to the post-conviction waiver provision, and he has not alleged any defect in his waiver. Consequently, the Court finds that the plea agreement's waiver provision is valid and fully enforceable, and that it stands as an absolute bar to Petitioner's attempts to challenge his sentence on the basis alleged .

To the extent Petitioner's claim was not waived pursuant to his plea agreement, his claim

7

is barred because he did not raise the claim on direct appeal. Claims that could have been raised on appeal, but were not may not be asserted in collateral proceedings. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors complained of or that he is actually innocent. See United States v. Mikalajunas, 186 F.3d 490, 492, 93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).

Petitioner contends that he did not raise his claims on direct appeal because "[t]he fact that [his] current 2255 motion is based primarily on ineffective assistance of counsel is what prevented [him] from filing a direct appeal with the assistance of said counsel."[4] (Doc. No. 1 at 2). When using ineffective assistance of counsel to excuse procedural default of another independent claim, counsel must have been so wholly deficient as to violate Petitioner's Sixth Amendment right. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986), abrogated on other grounds by Sawyer v. Whitley, 505 U.S. 333 (1992)). Thus, Petitioner must show that by failing to challenge this sentencing issue, counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668 (1984). The Supreme Court has explained that while ineffective assistance of counsel may establish cause for a procedural default, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for

---

[4] This particular claim challenges the sentence. Petitioner's remaining claim asserts ineffective assistance of counsel.

a procedural default." Murray, 477 U.S. at 486. Petitioner's blanket conclusory assertion that he did not file a direct appeal because his counsel was ineffective falls short of establishing "cause" for his procedural default. Petitioner has not met his burden in establishing cause for failing to raise this claim on direct appeal. Therefore, Petitioner has defaulted this claim barring collateral review.

**B.     Ineffective Assistance of Counsel**

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687-91, 104 S.Ct. 2052, 2064-66, 80 L.Ed.2d 674 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689, 104 S.Ct 2052.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639. 2648, 91 L.Ed.2d 197 (1986) (quoting United States v. Frady, 456 U.S. 142, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins v. Garrison, 724 F.2d at 1430-31 (4th Cir. 1983)). Therefore, if Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697, 104 S.Ct. at 2069).

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the

9

proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

A petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption, and the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir. 1983). Indeed, the petitioner bears an even heavier burden where the claim of ineffective assistance of counsel follows the entry of a guilty plea. Where defendant has pled, he must show that but for counsel's unprofessional errors, he would have gone to trial instead of pleading guilty. Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct 366 (1985). In order to demonstrate an entitlement to relief when the claim involves a sentencing issue, Petitioner must, at a minimum, allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999).

Petitioner contends that his counsel was ineffective because he did not spend sufficient time with him hearing his side of the case or preparing for the possibility of trial and instead simply negotiated a plea deal with the Government. Petitioner also contends that his counsel did not sufficiently review discovery and did not examine any of the mitigating evidence.

The record does not support Petitioner's claims. With respect to the time counsel spent with Petitioner, Petitioner contends that he met with his counsel one time on September 22, 2008, for less than three hours. (Doc. No. 1 at 2). Petitioner concedes that he also had an email communication with him on October 7, 2008. Petitioner argues that counsel did not spend enough time with him before providing his assessment of the case and did not seem to give any credence to Petitioner's account of the facts. The sentencing transcript reveals that counsel took

10

into account Petitioner's account of the facts of this case. Indeed, Petitioner argued in his sentencing memorandum and at the sentencing hearing that Petitioner did not set out to distribute child pornography. (Crim. Case 3:08cr209, Doc. No. 19: Sentencing memorandum and Doc. No. 28: Sentencing Transcript at 13). The Government also acknowledged this fact and agreed to a lower sentence in light of this fact and the Court also acknowledged this fact in imposing Petitioner's sentence. (Id., Doc. No. 28: Sentencing Transcript at 22). Further, while it may be the case that Petitioner only had one in- person conference with counsel, although counsel stated at sentencing that he had several in-person conferences with Petitioner, (id., at 15), that alone does not equate with ineffective assistance of counsel. Indeed, Petitioner contends that counsel also emailed him his assessment of the case after their in- person meeting and the record supports that counsel spent significant time negotiating Petitioner's case with the Government. Indeed, both Petitioner's counsel and counsel for the Government mentioned the negotiations that went into Petitioner's Plea Agreement. (Id. at 15, 19). Petitioner has not established deficiency with respect to his claim that counsel only met with him one time for less than three hours and that counsel did not consider his account of the facts of this case. Even if this Court were to assume deficiency, Petitioner has not established any prejudice. Further, the Court notes that Petitioner has not asserted that but for counsel's deficiency, he would have insisted on going to trial.

Next, Petitioner contends that his counsel did not spent time preparing for the possibility of a trial. As stated above, Petitioner spent significant time negotiating with the Government and in so negotiating, reviewing the evidence. (Id.). To the extent that counsel reviewed the evidence with the Government, counsel was positioned to prepare for a trial if that became necessary. However, Petitioner chose to plead guilty to the distribution charge. Indeed,

Petitioner stated at his Plea and Rule 11 hearing that no one forced, intimidated or coerced him into pleading guilty. Clearly, Petitioner now regrets his decision to plead guilty. Indeed, in his Motion to Vacate, he states that "the movant has to question the validity behind his own reasoning to pled guilty . . . ." However, despite his current regrets over his plea, he has not established either prong of the Strickland test and his claim that counsel was ineffective for failing to prepare for the possibility of trial is denied.

Finally, Petitioner contends that his counsel was ineffective for failing to examine the mitigating evidence. Once again, the record belies this claim. Indeed, Petitioner's counsel filed a sentencing memorandum with the court, prior to sentencing, regarding the factors the Court must consider in fashioning a sentence pursuant to 18 U.S.C. § 3553(a). (Crim. Case 3:08cr209, Doc. No. 19). Counsel argued that there were several factors militating in favor of a downward variance, including the fact that Petitioner voluntarily ceased the charged conduct and deleted the contraband images prior to knowing he was being investigated; his lack of criminal history; and his lack of any history of sexual problems or misconduct involving children and his longstanding appropriate sexual relationship with an age peer. (Id.). At sentencing, Petitioner expanded on this argument.

In light of the record, the Court cannot agree that Petitioner's counsel was ineffective for failing to examine the mitigating evidence. Petitioner has simply not established evidence of deficiency or prejudice as is required pursuant to Strickand. Further, with respect to any of his claims of ineffective assistance of counsel, he has not even asserted that but for counsel's unprofessional errors, he would have insisted on going to trial. Nor would it have been reasonable for him to have done so. Indeed, if counsel had proceeded to trial, his sentencing exposure would have been significantly higher if found guilty. (Crim. Case 3:08cr209, Doc. No.

16: PSR and Doc. No. 27-1 at 1; email from Government to Petitioner's counsel indicating that if indicted, as opposed to pleading to the Information, Petitioner would have faced charges under 18 U.S.C. § 2251(d)(1)(A), advertising child pornography, which carries a sentence of between fifteen and thirty years of imprisonment).

To the extent that Petitioner is attempting to challenge the voluntariness of his plea, as a separate claim from his ineffective assistance of counsel claim related to his plea, such claim is procedurally barred as Petitioner did not challenge the voluntariness of his plea on appeal.[5] However, even if this claim were not barred, it is belied by the record which establishes that the Court reviewed the elements and corresponding maximum penalties of the charge with Petitioner. The Court also thoroughly questioned Petitioner regarding his understanding of the rights he was waiving by pleading guilty, including his right to go to trial and all the rights attendant thereto as well as his waiver of appellate rights and collateral review rights. The Court concluded that Petitioner's plea was knowing and voluntarily entered and the district court affirmed this finding. (Crim. Case 3:08cr209, Doc. No. 28: Sentencing Transcript at 3-4).[6] Petitioner is bound by the statements he made at the Plea and Rule 11 hearing specifically, that he understood the charge and corresponding penalties and that he was, in fact, guilty. These

---

[5] Although it does not appear that Petitioner is challenging the voluntariness of his plea in that he appears to be seeking a reduction in sentence as opposed to a withdrawal of his plea, the Court includes this analysis in an abundance of caution.

[6] Petitioner's knowing and voluntary guilty plea constitutes an admission of the material elements of the crime, see McCarthy v. United States, 394 U.S. 459, 466 (1969), and waives non-jurisdictional errors, including the deprivation of constitutional rights which allegedly occurred prior to the entry of the guilty plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973). Indeed, "a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges. United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993).

statements cannot be set aside merely on the basis of Petitioner's post-judgment assertions to the contrary. Rather, Petitioner's statements "constitute a formidable barrier" to this post-judgment attack. Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621 (1977); accord United States v. Lemaster, 403 F.3d 216, 220-23 (4th Cir. 2005) (affirming summary dismissal of §2255 motion, including ineffective assistance claim, noting inconsistent statements made during Rule 11 hearing).

## IV. CONCLUSION

The Court has considered the pleadings and documents submitted by the Petitioner and the entire record of this matter and finds that it is clear that Petitioner is not entitled to relief on his claims.

## V. ORDER

**IT IS, THEREFORE ORDERED** that:

1. The Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **DENIED and DISMISSED**.

2. The Government's Motion to Dismiss (Doc. No. 7) is **GRANTED**;

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists

 would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when

relief is denied on procedural grounds, petitioner must establish both that dispositive procedural ruling is debatable, and that petition states a debatable claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: September 1, 2011

Graham C. Mullen
United States District Judge